IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| REAGAN OUTDOOR ADVERTISING,<br><br>Plaintiff,<br><br>v.<br><br>SALT LAKE CITY CORPORATION and RALPH BECKER,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00435<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Reagan Outdoor Advertising sued Defendants Salt Lake City Corporation and former Mayor Ralph Becker under Section 1983, alleging violations of procedural due process, substantive due process, and equal protection. Plaintiff also asserts state law takings claims.[1] The court grants Defendants' motion to dismiss.

**I**.

Salt Lake City Corporation is a Utah municipality. *See* Dkt. No. 2 ("Compl.") ¶ 2. Mr. Becker was mayor of Salt Lake City from 2008 until 2017. *See id.* ¶ 3; Dkt. No. 22 at 12. As Mayor, Mr. Becker had a well-known policy goal of reducing the number of billboards in the City. *See* Compl. ¶ 11.

---

[1] It is evident from the complaint that Plaintiff's takings claims are based on state law rather than federal law. And Plaintiff's counsel confirmed that this is so at the hearing on the motion to dismiss. *See* Hearing Held on Sept. 2, 2020, at 47:53–48:13.

From approximately 1975 until 2015, Reagan Outdoor Advertising or its predecessor-in-interest maintained and displayed a billboard on a commercial property located in the City at 218 East 400 South pursuant to a lease with the property's owner. *See* Dkt. No. 22 at 7–8. Around September 2014, Plaintiff began negotiating with the property's owner to renew this lease. *See* Compl. ¶ 9. The owner, however, subsequently sold all billboard rights associated with the property to the City for $250,000. *See* Dkt. No. 2-1 at 3–4. The City agreed to pay the owner an additional $100,000 if Plaintiff was unable to construct a replacement billboard elsewhere. *See id*. Because of this agreement, Plaintiff was unable to renew its lease and was required to remove the billboard and deposit credits into the City's billboard bank. *See* Compl. ¶ 20.

The billboard bank provides a mechanism for a billboard owner who removes a billboard to relocate the billboard to a different location or to construct a replacement billboard at the new location. *See* Dkt. No. 22-1 at 3–5.[2] These credits must be used within three years or they expire. *See id.* Because Plaintiff's billboard was located in the 400 South Special Gateway, which comprises all of the properties located on 400 South between 200 East and 800 East, Plaintiff could use its billboard credits only within this special gateway. *See id*. at 5; Compl. ¶ 19. In addition, the credits could be used only on a property with a zoning classification equal to or less restrictive than the property from which the billboard was removed. *See* Dkt. No. 22-1 at 5.

---

[2] In ruling on a motion to dismiss, courts generally consider only the "facts . . . alleged in the complaint itself." *Employees' Retirement System of R.I. v. Williams Companies, Inc.*, 889 F.3d 1153, 1158 (10th Cir. 2018). This rule is not absolute, however: a court may, for example, also consider "matters of which a court may take judicial notice." *Id*. A court may thus take notice of "an adjudicative fact . . . [that] is 'not subject to reasonable dispute,'" which means the fact is "'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201). In this case, both parties have submitted exhibits that they wish the court to consider. All of these exhibits are publicly available government documents or documents "whose accuracy cannot reasonably be questioned." The court accordingly takes judicial notice of the proffered documents.

Shortly before its billboard credits would expire, Plaintiff applied for a permit to construct a replacement billboard on another property within the special gateway. *See* Compl. ¶¶ 24–25. This permit was denied by the City's Zoning Administrator on the ground that this property was subject to a more restrictive zoning classification than the property from which Plaintiff had removed its billboard. *See id*. ¶¶ 25–26. Plaintiff appealed this denial to the City's Hearing Office, which upheld the Zoning Administrator's decision. *See id.* ¶ 27. Plaintiff then filed an appeal in state district court, which is still pending. *See id.*

Plaintiff alleges that since Defendants rezoned the 400 South Special Gateway in 2012, there is no location at which Plaintiff could use its billboard credits. *See id.* ¶ 28. This rezoning left the property where the billboard had been located in a D-1 zone but placed all of the other properties in the special gateway in various TSA (Transit Station Area) zones. *See* Dkt. Nos. 27 at 6 n.2; 37-5. Plaintiff sought to construct the replacement billboard on a property within a TSA-UN-T zone, which the Zoning Administrator and hearing officer both found was more restrictive than the D-1 zone. *See* Dkt. No. 37-9 at 6. Plaintiff argues that all of the TSA zones are more restrictive than the D-1 zone. *See* Compl. ¶¶ 28–29. Judging from the TSA zone descriptions, it is possible that Plaintiff is correct. *See* Dkt. No. 38 at 9–14. Defendants, however, have sometimes argued that at least one of these zones is no more restrictive than the D-1 zone, though on other occasions they have equivocated on this question. *See* Dkt. No. 37-9 at 7–8.

Plaintiff also claims that it was not given notice of the rezoning as required by Utah Code § 72-7-506. *See* Compl. ¶ 30. The rezoning ordinance was temporarily enacted in April 2012 and permanently enacted in October of the same year. *See* Dkt. No. 37 at 2–3. The ordinance was publicly posted, published in a newspaper, and mailed to the owners of properties located within the rezoning area. *See id.* at 3. Plaintiff did not receive mailed notice because it had only a

leasehold interest in the property where the billboard was located and because the ordinance did not change the zoning classification of that property in all events. *See id.* at 3–4.

## II.

The court first addresses Plaintiff's procedural due process claim. Plaintiff alleges that Defendants violated its procedural due process rights by rezoning the special gateway, purchasing the billboard rights previously leased to Plaintiff, and denying Plaintiff's application to use its credits to construct a replacement billboard without providing adequate process. *See* Compl. ¶¶ 12–16, 25–27. The Due Process Clause generally requires that before the government takes executive or judicial action that would deprive an individual of life, liberty, or property, it must provide notice and an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (cleaned up). For the following reasons, the court grants Defendants' motion to dismiss Plaintiff's procedural due process claim.

### A.

In "assess[ing] whether an individual was denied procedural due process, courts must engage in a two-step inquiry," first asking whether "the individual possess[ed] a protected interest such that the due process protections" apply. *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011). Plaintiff argues that it had "a protectable property interest in both its Billboard and its billboard credits." Dkt. No. 27 at 7.

Plaintiff does not dispute that it still owns the billboard itself, which remains in its possession. *See* Dkt. No. 32 at 7. Plaintiff thus has not suffered any injury to this property interest.

Although Plaintiff concedes that it did not have "a protectable property interest in the renewal of the Lease," it nevertheless argues that Defendant terminated its "associated property

4

rights" without due process of law. Dkt. No. 27 at 7, n.4. The court concludes, however, that any "associated" right that ended when the lease expired was not a protected property interest because Plaintiff lacked any "implied right to renew a lease." *Keith Jorgensen's Inc. v. Ogden City Mall Co.*, 26 P.3d 872, 878 (Utah Ct. App. 2001).

The court need not, and does not, decide whether Plaintiff had a constitutionally protected property interest in the billboard credits because the court concludes that, even if it did, Plaintiff was afforded due process in connection with the City's denial of the request to use these credits to construct a replacement billboard. As the Tenth Circuit has explained, courts need not "address the existence of a protected property interest . . . [before] considering a due-process claim." *Onyx Properties LLC v. Board of County Commissioners of Elbert County*, 838 F.3d 1039, 1043 n.2 (10th Cir. 2016).

## B.

The court must next consider whether "the individual [was] afforded an appropriate level of process." *Montoya*, 662 F.3d at 1167. Plaintiff first alleges that Defendants "rezoned the Special Gateway in a manner that render[ed] it impossible for Plaintiff to use its billboard credits to relocate the billboard to any other property within the Special Gateway," thereby depriving Plaintiff of its property rights in the billboard credits without due process. Compl. ¶¶ 28–29. Plaintiff also alleges that "Utah Code section 72-7-506" required Defendants to provide Plaintiff notice of the rezoning. *Id.* ¶ 30.

But "general zoning law[s are] a legislative act." *Onyx Properties*, 838 F.3d at 1044. And "the Supreme Court [has] held that constitutional procedural due process does not govern" legislative acts. *Id.* at 1045 (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445 (1915)). This is because

> [i]n altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements.

*United States v. Locke,* 471 U.S. 84, 108 (1985).

The City provided notice of the rezoning by publicly posting it, publishing it in a newspaper, and mailing it to property owners within the rezoning area. *See* Dkt. No. 37-4. It also held "a community meeting where the proposed changes were available for review and comment." Dkt. No. 37-3 at 4. These actions clearly met the low threshold of process constitutionally required for legislative acts. And, given that its actions met this constitutional threshold, it is irrelevant whether the City also fully complied with the specific requirements of Utah Code section 72-7-506, for "violation of state procedural requirements does not in itself deny federal constitutional due process." *Onyx Properties*, 838 F.3d at 1044 (cleaned up).

## C.

Plaintiff next alleges that Defendants violated its procedural due process rights by secretly negotiating for and purchasing the billboard rights associated with the property where Plaintiff's billboard had been located. *See* Compl. ¶¶ 12–15. As explained, Plaintiff did not have any property interest in the renewal of its lease, and it was not deprived of the billboard itself. Nor is it clear how Defendants' purchasing the billboard rights could have deprived Plaintiff of any property interest in the billboard credits since these credits came into existence only when Plaintiff removed the billboard because it could not renew the lease.

In addition, the City acted as a market participant when it negotiated and contracted with the property owner. *See Reeves, Inc. v. Stake*, 447 U.S. 429, 436–37 (1980). To be sure, "[w]hen a State buys or sells, it has the attributes of both a political entity and a private business." *Id.* at

6

439 n.12. But "[t]here is no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market." *Id.* at 437. To the contrary, "like private individuals and businesses," a government entity generally "enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." *Id.* at 439 n.12 (cleaned up); *cf. Augustin v. City of Philadelphia*, 897 F.3d 142, 149, n.3 (3d Cir. 2018) (treating the government like a private creditor for purposes of determining whether a prejudgment remedy complied with procedural due process where the government sought that remedy for "essentially private debt stemming from the City's participation in ordinary commerce").

While those with whom the government contracts as a market participant might have some procedural due process rights, outside the employment context it appears that if such rights exist at all, they are limited and amply satisfied by state-law remedies. *See Masso-Torrellas v. Municipality of Toa Alta*, 845 F.3d 461, 467 (1st Cir. 2017) ("A simple breach of contract does not amount to an unconstitutional deprivation of property. To hold otherwise would run the risk of transmogrifying virtually every dispute involving an alleged breach of contract by a state or a state agency into a constitutional case.") (cleaned up); *Ramsey v. Board of Education of Whitley County, Ky.*, 844 F.2d 1268, 1273 (6th Cir. 1988) ("A state breach of contract action is most clearly an adequate remedy for a property deprivation when the only basis for federal jurisdiction is that a state actor is one of the contracting parties."); *San Bernardino Physicians' Services Medical Group, Inc. v. San Bernardino County*, 825 F.2d 1404, 1409–10 (9th Cir. 1987) ("Yet the farther the purely contractual claim is from an interest as central to the individual as employment, the more difficult it is to extend it constitutional protection without subsuming the entire state law of public contracts.").

But the parties have not cited and the court is not aware of any precedent suggesting that the government must provide procedural due process not only to those with whom it contracts, but also to those against whom it competes for goods and services when it acts as a market participant. In all events, even assuming that Defendants' actions in negotiating for and purchasing the billboard rights contributed to the deprivation of any property rights Plaintiff may have had in the billboard credits, the court concludes that the procedures afforded Plaintiff in connection with the City's denial of its request to use its billboard credits, discussed more fully below, *see infra* Part II.D, afforded Plaintiff any limited process to which it may have been entitled when the City competed against it, as a market participant, for the billboard rights.

## D.

Plaintiff also alleges that the "process for challenging Defendants' decision to deny Plaintiff the ability to maintain [and relocate] the Billboard, and of which Plaintiff availed itself, is patently inadequate, biased, futile, and had a predetermined outcome." Compl. ¶ 54. As noted, procedural due process generally requires notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *Eldridge*, 424 U.S. at 333 (cleaned up). Determining whether the process afforded in connection with judicial or executive action comports with the requirements of procedural due process generally requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and the administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge*, 424 U.S. at 335.

Here, after a zoning administrator denied Plaintiff's request for a building permit to construct a new billboard using its billboard credits, Plaintiff was afforded, and took, an administrative appeal to the City's Hearing Office. *See* Dkt. No. 37-9. In connection with this appeal, Plaintiff was provided an opportunity to submit evidence, briefing, and oral argument. *See id*. at 2. The standard of review for the appeal was "de novo," with "no deference to the decision" by the City, though Plaintiff bore "the burden to show the decision of the City to be in error." *Id*. at 3. After the administrative appeal, Plaintiff was afforded, and took, an appeal to the state trial court. *See* Compl. ¶ 27.

Analyzing these procedures under the *Eldridge* factors, the court concludes there was no due process violation. First, Plaintiff does have private interests affected by Defendants' action, namely, Plaintiff is unable to use its billboard credits to construct a replacement billboard. The second factor weighs in favor of the Defendants, however, because the three layers of procedure afforded to Plaintiff, which include at least one de novo review and one state-court review, dramatically reduce the "risk of an erroneous deprivation." *Eldridge*, 424 U.S. at 335. Any additional procedural safeguards would provide little value to Plaintiff.

The third factor also favors Defendants. In addition to the general interest the City undoubtedly has in efficiently enforcing its zoning ordinances, controlling precedent makes clear that it also has a more specific interest in regulating and reducing the number of billboards. As the Supreme Court has held, "the regulation of billboards [falls] within the legitimate police powers of local government," *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 498 n.7 (1981), because cities have an "interest in avoiding visual clutter," and billboards can be "perceived as an 'esthetic harm,'" *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806, 808 (1984) (quoting *Metromedia, Inc.*, 453 U.S. at 510). Any

9

additional procedures provided by the City would likely be costly and provide little if any additional benefit to Plaintiff, while simultaneously hindering the City's ability to efficiently enforce its zoning ordinances and to advance its "legitimate municipal goal" of "reducing the number of billboards for esthetic reasons." Dkt. No. 22 at 13. Especially given the Tenth Circuit's guidance that "in land use proceedings, parties are simply not entitled to anything like a judicial hearing with all its adversarial trappings," the court concludes that the procedures afforded Plaintiff here amply satisfied the requirements of procedural due process. *Landmark Land Co. of Oklahoma, Inc. v. Buchanan*, 874 F.2d 717, 724 (10th Cir. 1989) (cleaned up).

### III.

The court next turns to Plaintiff's substantive due process claim. Plaintiff alleges that Defendants' "solicitation of a private landowner, with whom Plaintiff was in negotiations to renew the Lease, to sell it the rights to maintain a billboard on the Property while contemporaneously rezoning the land within the Special Gateway in a manner that would prevent Plaintiff from moving the Billboard to any other location" violated substantive due process. Compl. ¶ 46. Plaintiff further alleges that these actions reflected animus toward Plaintiff in particular, or toward billboard owners generally, and were "motivated by improper motive or intent and involved reckless or callous indifference to Plaintiff's constitutionally protected rights." *Id.* ¶ 48.

The Supreme Court has repeatedly held that the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "While due process protection in the substantive sense limits what the government may do in both its legislative . . . and its executive

10

capacities, . . . criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

When considering a substantive due process challenge to legislative action, the court first considers whether the legislation restricts a fundamental right "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). If it does, the legislation may be subject to heightened scrutiny. *See id*. at 720 (substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests"). If it does not, substantive due process requires only that the legislation "be rationally related to legitimate government interests." *Id*. at 728.

By contrast, "in a [substantive] due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8; *see also id.* at 846 (explaining that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense") (cleaned up). The Supreme Court has acknowledged that "the measure of what is conscience shocking is no calibrated yard stick" and that this test is accordingly not susceptible to "mechanical application." *Id*. at 847, 850. Rather, "substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id*. at 850. The Supreme Court has, however, indicated that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id*. at 849. The Tenth Circuit has accordingly concluded that when a substantive due process challenge is brought against an executive action, the question is "whether [the alleged] action bears a 'reasonable justification in

11

the service of a legitimate governmental objective' or if instead it might be 'characterized as arbitrary or conscience shocking.'" *Browder v. City of Albuquerque*, 787 F.3d 1076, 1078–79 (10th Cir. 2015) (quoting *Lewis*, 523 U.S. at 846–47).

Here, Plaintiff has not alleged that the legislative action of rezoning the properties within the 400 South Special Gateway restricts fundamental rights deeply rooted in this Nation's history and tradition. It is thus subject only to rational basis review.[3] Even indulging the rather implausible assumption that the rezoning did not bear a rational relationship to any other legitimate government interests and that its sole purpose was to eliminate Plaintiff's billboard, the court easily concludes that it satisfies this deferential level of scrutiny in light of the City's legitimate interest in regulating and reducing the number of billboards, discussed above. *See supra* Part II.D; *Metromedia*, 453 U.S. at 498 n.7.

Because Defendants were acting as market participants, their negotiation for and purchase of the billboard rights may not be subject to substantive due process scrutiny at all. *See supra* Part II.C. To the extent these actions constitute executive action subject to substantive due process scrutiny, the court nevertheless rejects Plaintiff's claim. In light of the City's legitimate interests in regulating and reducing the number of billboards, the court cannot say that the negotiation and purchase of the billboard rights, whether or not considered in connection with the rezoning, constituted "conduct intended to injure in some way *unjustifiable by any*

---

[3] To the extent the rezoning implicated Plaintiff's rights under the Takings Clause or the First Amendment, the court notes that where a provision of the Bill of Rights "provides an explicit textual source of constitutional protection" against the alleged action, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because Plaintiff here has not asserted a claim under either the federal Takings Clause or the First Amendment, the court will not attempt to shoehorn consideration of the protections expressly provided by these amendments into its substantive due process analysis.

*government interest.*" And although Defendants' conduct may well have been bare knuckled and underhanded, viewed in the context of contemporary local politics, the court cannot say that it otherwise constituted "behavior . . . so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." The court accordingly grants Defendants' motion to dismiss Plaintiff's substantive due process claim.

## IV.

The court next addresses Plaintiff's equal protection claim. Plaintiff alleges that it is "a member [of] a particular group, billboard owners," and that the Defendants have "stated a public animosity toward" this group and took the challenged actions because of Plaintiff's "membership in this identifiable group." Compl. ¶ 65. Alternatively, Plaintiff alleges that it "is a member of a 'class of one' and Defendants deliberately sought to deprive Plaintiff of equal protection of the laws for reasons of a personal nature and an illegitimate animus toward Plaintiff." *Id.* ¶ 66.

The Equal Protection Clause of the Fourteenth Amendment protects "every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). So long as the government classifies neither on a suspect basis, such as race, nor with respect to fundamental rights, however, the Equal Protection Clause permits the government to draw distinctions between groups or individuals and treat them differently as long as doing so is rationally related to a legitimate government purpose. *See, e.g.*, *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 40 (1973).

Regardless of whether an equal protection claim is brought under a class-of-one or a class-based theory, the plaintiff must show that (1) he or she, or the class of which he or she is a member, was "intentionally treated differently from others similarly situated" and (2) the disparate treatment had "no 'rational basis'" behind it. *SECSYS, LLC., v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). In addition to "proceed[ing] through essentially the same two steps a plaintiff alleging a class-based claim must," a class-of-one plaintiff must also "prove that [the defendants] harbored not only an intent to discriminate without a rational basis but also some additional and 'exploitative' or 'vicious' 'motive.'" *Id.* at 688–89.

As discussed, *see supra* Part III, Plaintiff has not alleged that Defendants' actions implicated fundamental rights. In addition, billboard ownership is not a suspect classification, and Plaintiff has not alleged that the Defendants' actions were based on a suspect classification such as race, sex, or national origin. And given the City's legitimate interest in regulating and reducing the number of billboards, the court cannot say that Defendants' alleged differential treatment of Plaintiff—whether as a billboard owner or as a member of a class of one—lacked a rational relationship to a legitimate government interest. The court accordingly grants Defendants' motion to dismiss Plaintiff's equal protection claim.

## V.

It is well settled that "[a] municipality may not be held liable [under § 1983] where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Because it has rejected all of Plaintiff's constitutional claims, the court must also dismiss Plaintiff's claim for liability based on municipal policy, practice, and custom. All of Plaintiff's federal claims are thus dismissed with prejudice.

In addition, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise [supplemental] jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see also* 28 U.S.C § 1367(c)(3). The court accordingly dismisses Plaintiff's state-law claims without prejudice.

\*   \*   \*

This opinion should not be understood to condone Defendants' actions or to suggest that they were not bare knuckled and underhanded. For although this court has a duty to vindicate those specific rights secured by the Constitution or other federal law, it does not have a roving commission to remedy all grievances and injustices.

Defendants' motion to dismiss is **GRANTED**. Plaintiff's federal claims are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

DATED this 6th day of February, 2021.

BY THE COURT:

Howard C. Nielson, Jr.
United States District Judge